**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

September 7, 2022

Peter J. Walsh, Jr., Esquire
Kevin R. Shannon, Esquire
Christopher N. Kelly, Esquire
Mathew A. Golden, Esquire
Callan R. Jackson, Esquire
Potter Anderson & Corroon LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801

Edward B. Micheletti, Esquire
Lauren N. Rosenello, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
920 N. King Street, 7th Floor
P.O. Box 636
Wilmington, DE 19899-0636

Brad D. Sorrels, Esquire
Wilson Sonsini Goodrich & Rosati, P.C.
222 Delaware Avenue, Suite 800
Wilmington, DE 19801

Re:     *Twitter, Inc. v. Elon R. Musk et al.*,
          C.A. No. 2022-0613-KSJM

Dear Counsel:

This letter resolves issues raised in the September 2, 2022 letter to the court from

Plaintiff Twitter, Inc. ("Plaintiff") seeking sanctions against Defendants Elon R. Musk, X

Holdings I, Inc., and X Holdings II, Inc. ("Defendants") for Defendants' discovery

misconduct.[1]  I refer to the September 2 letter as Plaintiff's Fourth Discovery Motion.[2]

Once again, I assume that the reader is familiar with the background of this action.

Plaintiff's Fourth Discovery Motion identifies clear deficiencies in Defendants' document production.  Third parties produced text messages with Musk that Musk himself did not produce, and Musk's own production of text messages revealed glaring deficiencies.  As just one example, Defendants produced two texts sent to Musk from Robert Steel of Parella Weinberg Partners on June 17 at 9:57 a.m. and 10:15 a.m.[3]  The 9:57 a.m. text asks a question.  The 10:15 a.m. text—stating "Ok. Got it. . . ."—implies that Musk responded.[4]  Assuming that Musk's response was not telepathic, one would expect some evidence of it in Defendants' document production.  But Defendants provided none by the deadline for substantially completing document discovery.

Defendants' approach to answering interrogatories also left much to be desired.  As one example, on August 23, I ordered Defendants to respond to interrogatories that required Defendants to identify persons with knowledge of relevant facts.[5]  Defendants supplemented their responses on August 26, but they did a bad job of it, identifying only a

---

[1] C.A. No. 2022-0613-KSJM, Docket ("Dkt.") 376 (Pl.'s Fourth Disc. Mot.); *see also* Dkt. 393 (Def.s' Opposition).

[2] For those counting, I skipped over Plaintiff's Third Discovery Motion seeking Musk's privileged communications stored on the SpaceX and Tesla servers.  Dkt. 375.  That motion remains under advisement.

[3] Pl.'s Fourth Disc. Mot. at 9.

[4] *Id.*

[5] Dkt. 221 at 5.

handful of people about whom Twitter was already aware.[6]  Defendants supplemented their responses again on August 31, this time identifying 491 people with knowledge.[7]  Because the August 31 response was based on a review of Musk's texts collected on August 1,[8] it could have been provided much earlier.

Defendants have now cured many of the deficiencies about which Plaintiff complained in its Fourth Discovery Motion.  They accuse Plaintiff of jumping the gun and seeking sanctions prematurely, but I do not see it that way.  I can understand why Plaintiff requires relief.  Plaintiff has born the bulk of the burden of discovery.  In addition to the onerous "historical snapshot" that was the subject of Defendants' Second Discovery Motion,[9] Plaintiffs collected, reviewed, and produced documents from 42 custodians.  Defendants agreed to produce from just two custodians.  Defendants had less to do but still fell short in their obligations.  Defendants' prior deficiencies have left Plaintiff wondering whether there are other deficiencies and scrambling in third-party discovery.

Despite the imbalance in burden and Defendants' suboptimal conduct, the relief that Plaintiff seeks through it Fourth Discovery Motion taken as a whole is too extreme.  Granting the relief as requested would be an overreaction.  Plaintiff asks for *all* text messages from Defendants' two custodians for the negotiated period regardless of whether

---

[6] Pl.'s Fourth Disc. Mot. at 5.

[7] *Id.* at 12–13.

[8] Dkt. 412.

[9] *See* Dkt. 247.

such text messages are relevant, but that is an intrusive request. Plaintiff asks for sworn statements regarding Defendants' collection efforts and other issues, but the representations made by Defendants' counsel to date are extensive, and I am not convinced that further lawyer-crafted explanations will shed greater light on the issues in any event. Plaintiff asks for an immediate custodial deposition of Musk, but Plaintiff will be deposing Musk quite soon given the case schedule. For the avoidance of doubt, Plaintiff may ask Musk whatever custodial questions it would like to ask during his deposition, but there is no need to conduct a separate custodial deposition. These requests are denied.

Two of Plaintiff's requests are granted. Plaintiff asks the court to suspend third-party discovery deadlines as to Plaintiff. This request is reasonable, and it is granted, but trial is still on, and so third-party discovery must happen promptly. Plaintiff may not use this relief to gain any tactical advantage and must act in good faith to move forward with third-party discovery as quickly as possible. Plaintiff also asks Defendants to obtain and produce phone company records concerning the text messages that Musk and Birchall sent or received during the relevant period. This too is reasonable, and it is granted, as it will allow Plaintiff to confirm whether Defendants' representations that Musk did not text about Twitter during key periods are accurate.

IT IS SO ORDERED.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Kathaleen St. Jude McCormick
Chancellor

cc:     All counsel of record (by *File & ServeXpress*)